Oral argument not to exceed 15 minutes per side. Sarah Gelsomino for the appellant. You may proceed. Thank you very much. Good morning, Your Honors. Sarah Gelsomino on behalf of the plaintiff appellant in this case. I'd like to reserve four minutes for rebuttal, please. Your Honors, we're here this morning because this case must be sent back for a new trial because of the court's fundamental misunderstanding of the application and differences between state law and federal law that led to a jury instruction that inaccurately stated the law for the jury, which resulted in the jury not actually reviewing the evidence in light of the state law claim. And also because of a number of evidentiary rulings by the judge which prejudiced the plaintiff and abused his discretion, and not just in that it prevented the plaintiff from being able to present the full evidentiary record to the jury of admissible evidence, but also in foreclosing the plaintiff from being able to impeach the defendant, Mason, on his credibility, which was central to this case. As to the jury instruction, the trial court erred and prejudiced the jury when it instructed the jury that if they found defendant Mason, who was the sole defendant in this case, if they found that his conduct was unreasonable under the Fourth Amendment, then they must also find that it was not reckless. That is not the state of the law in the Sixth Circuit. There are distinctions between the state recklessness analysis and the federal court qualified immunity analysis that were important in this case. And because of the way that this instruction was presented to the jury, the jury was told not to consider the state recklessness claim at all. Counsel, did you raise this in your briefs? Yes. Where in your briefs? I don't have a page number for you. I can certainly find it for you. Page 19 of our opening brief is where it starts, I believe, according to our table of contents, which hopefully is accurate, Judge. So tell me the problem you're trying to identify that could come up in the jury conversation.  So they find that someone, a reasonable officer, would have done this, and then they can still say it was reckless? Yes. Is that the concept? Yes, exactly. And the reason is, as we all know, the qualified immunity analysis, or the Fourth Amendment analysis, is objectively reasonable. There's no subjective component to that analysis whatsoever. Also, there's a segmented analysis that the Sixth Circuit applies in shooting cases. That is not the case for state law under state immunity. A jury can find a defendant reckless either because of objective evidence or because of evidence of a subjective belief. And in this case... So what's the case that we should look at? If I go read it, I'll say, aha, it looks like Judge Sargas made a mistake. Sure. But I want to make sure I'm talking about the same thing. So it's a situation where everything shows this person acted reasonably, subjectively or objectively, and then we're still going to say it was reckless. That's what's turning my head. So which case is that that does that? Well, if you look for an explanation of the differences between these two concepts... Well, how about just give me the case, and then we'll talk through the theory. I want to just know one case when I read it. It'll show Eureka. She's right. I would look to Wilson v. Gregory. Say it again. Wilson v. Gregory. Okay. This is also explained in or considered in Redrick Pruitt v. The City of Akron, which was assured... You're already hedging. That shows... Are you still confident in Wilson? I am. I'm giving you two, Judge. That's how confident I am. Wilson was a recent case, though. Those are the opposite, just so you know, and everyone in the audience hears. The more cases that are cited, the less accurate each one is. That's been 21 years' worth of experience. But I'll go with Wilson to start. Thank you. Wilson is not a shooting case, but it is a recent Sixth Circuit case and does go through the differences and really highlight the differences between the purely objective considerations and the subjective... But it's doing the work you're talking about with state law? Because I thought your point was state law. Yes. Okay. Yes. In this case, the jury heard evidence that the defendant used a racial slur at the time of the shooting. This was disputed evidence, but the jury heard evidence of this. That would go to the subjective component of a recklessness claim. And because the jury was instructed not to consider the recklessness claim if they found him to be unreasonable, then that is evidence that the jury never considered in terms of their verdict. That's important evidence, and that is not harmless error. That resulted in prejudice to the plaintiff. This also ties into the totality of the judge's evidentiary rulings in this case, which precluded, as I said, the plaintiff from presenting evidence, both actual evidence and impeachment evidence, of the officer, which would go also to showing his subjective state of mind. And one of those examples is the other X evidence that we sought to introduce in this case and were not able to, including a prior shooting where Officer Mason, the defendant in this case, shot a black man who was fleeing, who was in possession of a gun, but who was not pointing the gun and had no other indicators that he had the intent to use that gun. What did Judge Sargis say when you put this instruction in front of him? No. That's what he said. No, no, no. Like, what was his reasoning? He's a good judge. Sure. That he disagreed. Interestingly, he agreed that there was a subjective component to the recklessness claim, and that came out in sidebars about what kind of evidence he actually was going to permit the defendant to bring in to show his own state of mind. But when it came to the actual jury instruction, he just believed that there was no real distinction between the two and that there was no world in which a jury could find an individual reckless if he was unreasonable. And Wilson's a case where they gave the instruction you're talking about? No, Judge. Wilson is a... What's a case where they gave that instruction and we said, yeah, you've got to do that? You know, I don't have this kind of a circumstance. Like, post-trial is really rare, so I don't have a case post-trial that I could show you. Maybe pre-trial. In the state law, I mean, in state court, certainly I've seen this instruction given, just not in a federal court setting, but in state court this would be, for example, in Luke Stewart v. The City of Euclid, an instruction was given that indicated there was a subjective and an objective component to the recklessness theory. And rejected the argument that what Judge Sargas said. Well, in that case, there wasn't. No, no, Judge, because in that case there wasn't a federal claim. So I don't have a case exactly in this posture to be able to point you to. But if you look to what the actual state law recklessness means, then it's clear. There are times where the two claims can rise and fall together. We acknowledge that. But there is a whole different part of a state law recklessness claim that the jury has to be able to consider, which is a subjective analysis. And there was evidence of that here, both that the jury heard and also that the judge kept out that the jury should have heard. And that would have changed the dynamic for the jury in their deliberations regarding the state law claim. What were the evidentiary objections distinct from the objection to the instruction? Sure. The evidentiary issues here are, there are a few. The first. Just to make sure we're on the same page. I thought you were saying these two things went hand in glove. And what was prejudicial to you was not getting an instruction and then keeping out evidence that went with the instruction. So I thought you would answer that first. Okay. I can start there, Judge. Thank you. One of the pieces of evidence that was kept out was other acts evidence. And this other acts evidence is what I was beginning to tell you about one particular prior shooting, which the department found to be justified. And that was a couple of years before Defendant Mason's shooting of Tyree King. Mason has an interesting background in terms of the office. He's been identified as one of the people who's used the most uses of force on the department. And Tyree King's shooting was his fourth in seven years, which is an extremely unusual number for any officer. And, in fact, resulted in his reassignment off of patrol after the fact. Because the department had concerns about his ability to be on patrol after that many uses of force. You're describing a bunch of stuff you wanted to get in and didn't. Tell me what you're, I'm trying to make sure I'm understanding the argument. Yes. So in that context, we tried to get in one particular use of force, which was a prior shooting for a couple of years earlier of a black man who was fleeing, who was in possession of a gun, but who did not point the gun and did not show any indication that he was going to use that gun. And Officer Mason shot him. The department found that to be justified. Because the department found that to be justified, it's our contention that it is, that Officer Mason shot again in this case because he believed that his actions would again be found to be justified and he wouldn't. This is more about the theory against the city on this point. Is that the point you're making? It could certainly go toward the theory against the city, which of course is an issue at the summary judgment stage in this. But no, it's a little bit different than that, Judge, because his subjective understanding that he could shoot in that situation, it would be justified even though he wasn't actually facing a threat, a deadly threat at that time. But why would that subjectively show recklessness? Isn't that what you're trying to do? Yes, because it shows that he was shooting before there was actually a deadly threat, which, before a deadly threat presented itself. But isn't the mindset that says I'm allowed to do this under department policy something other than recklessness? It might be stupid. Well, it goes toward, sure, but it is an important factor toward recklessness. In addition to that, because the segmented analysis doesn't apply, there is a concealment and cover issue that the judge prevented us from being able to ask about. Because there was an opportunity for Defendant Mason to take cover by a car. In fact, he testified to that in his deposition, but he didn't do that. Instead, he shot before a deadly threat arose. And the judge prevented us from being able to raise that theory whatsoever, but also importantly, even prevented us from being able to impeach Defendant Mason on that deposition testimony because the judge determined that he wasn't required to do that. And so, therefore, the jury couldn't even be presented with that evidence or impeachment evidence as it would go toward his mindset in determining whether or not he should use the use of force when he had an opportunity to take cover and communicate. Well, what is our standard of review here? In order for you to prevail, do we have to conclude that, do you have to argue that had the evidentiary rulings been different, had been in your favor or the jury instructions, that the outcome of the trial would have been different? Right. Is that what we have to evaluate? Well, that it's more than harmless error and that the plaintiff suffered prejudice from it, which cumulatively, both individually but also cumulatively here, especially in the context of what the judge did let in, in terms of evidence which inurged the benefit of the defendant, which extended the story and was prejudicial about prior acts at the, you know, the judge let in a significant amount of information about the robbery and the details of the robbery, which had nothing to do with the shooting. So to answer your question, Judge, we have to prove that the plaintiff was prejudiced by these rulings that were an abuse of discretion by the judge. Well, saying your client was prejudiced is one thing. Saying that the outcome of the trial would have been different is quite another. Well, it's impossible to know whether the outcome of the trial would have been different, but what we need to show is that the jury reached a seriously erroneous result and that the trial was unfair in some fashion to the moving party, to the plaintiff in this case. All right. Not necessarily, you know, we don't necessarily need to prove the change of the outcome, which would be very difficult, but that the outcome could have and very reasonably would have been different given the scope of the evidence that the jury was prevented from hearing. All right. Thank you. Thank you. Good morning, Your Honors. May I please the court? I'm asking you to affirm the district court's rulings in this case because there was no error here. Judge Sargis got everything right. He got it right with the post-trial motions. Why don't we talk through the instruction on state law, federal law? Absolutely. So there are cases, Sixth Circuit cases, that are directly on point on that issue, that if something to Pollard, Iwalski, Cooper, at a minimum those three, directly on point that if a use of force is objectively reasonable, it cannot be reckless under state law for the purposes of the immunity statute. Do they deal with the possibility that the person has this bad state of mind that just happens not to have led to a negligent act? I mean, I think it would encompass all of that because it was granted on summary judgment where the standard is very highly deferential to a plaintiff suing a police officer in those cases. Jordan v. Howard, state law case, directly on point too. It says it's barred by res judicata. And so normally, like on these cases, obviously there's an attorney citing to the court. I'm just citing the controlling case law. I was thinking this week, well, why is that the controlling case law? And if you think about it, on this case, for the wrongful death, it has to be a reckless battery under state law. For a reckless battery, the battery itself, it has to be an objectively unreasonable use of force. But now you're tacking on even a higher mental state of recklessness. So it's just that's why Jordan v. Howard got it right. It's barred by res judicata. I mean, it would be part of the underlying reckless battery claim. Another way of putting the point is that it's a conjunctive test. And if you fail the first part of the conjunctive test, you necessarily don't get to the second part. It's true for them to win, they have to show both, that it was a negligent battery and had the state of mind. But your point, I guess Judge Sargas' point, was you don't have to get into that state of mind inquiry if you fail the first level. Absolutely. And I think that – So they're right, the evidence is technically relevant. It just isn't relevant if you don't have a negligent battery. I would agree. I think that's what the controlling case law says. I mean, I think once it's found to be objectively reasonable, you don't even look. Is there even a higher mental state of recklessness at that point in time? Okay. Well, I think we understand ourselves. We'll see what she says in rebuttal. What else do you have to say? I'll just respond. What I would like to do is respond to any questions you have for me, but I will go down the list the way they were just presented to counsel. Prefer what you wish for. I've learned a long time ago I would rather be asked the question here than – So the other acts, evidence, the propensity – that's just an improper propensity argument. I mean, it doesn't appear that the appellants – when I was looking through the record this past week, it doesn't look like the final pretrial transcript was part of this. It is referenced in Judge Sargis' post-trial motion, or the order on the post-trial motions where he's denying the motion for a j on OVA and the motion for a new trial, where he had me explain, and he talks about it in his decision, he had me explain all of the prior shootings. They were all lawful. One of them was an active shooter who shot a police officer and then went on Ohio State's campus with an AK-47 and was shooting at everybody in the street. So Officer Mason shot there. The guy then goes in and commits suicide. He actually got an award for that, so that doesn't go to show he has some prior propensity of using excessive deadly force. The next one, somebody was going to execute somebody in a house, and he shot that person, so that's lawful. The one that was brought up to you here, the officer's looking for a murder suspect, and this guy gets out of the car with a gun and waves it back at the officer, and then that's when the shooting starts. So that's the context of that one. The guy drops the gun, and he's picking up the gun, and he gets shot one time in the butt. It's not a fatal shooting. That guy never sued. That was found to be within policy. I think the suspect in that actually got criminally charged for his behavior. So none of that's even relevant to show, even if you could show, bad character for using excessive force, which I don't think you can, but it doesn't even go to that. So it's irrelevant, and it's unduly prejudicial and was properly excluded. Talk about the reassignment. That's not relevant to what happened here. Anyways, he got reassignment. One of the main reasons he was getting death threats, including from, to be frank, members of the party's family, he was getting a lot of death threats. So he did get reassigned. He's now a sergeant on patrol. It's not like the city of Columbus is like, no, you're horrible. We're now getting well outside the record? Absolutely, Your Honor. Cover and concealment, that theory. So here's what's going on here. That was properly kept out as well. Actually, it's not typical that you have an opinion from an expert directly on point keeping it out. That's what we had here. We had another case where this expert tried to argue this theory that, you know, he used bad tactics going into a situation, therefore your later objectively reasonable use of force is unreasonable. Sixth Circuit has already rejected that many, many times. And I think about the case, the Destin Thomas case. That was one of the main arguments in that case too, where a police officer is running to the scene of a home invasion, and the guy comes running out of the home with a gun, and, you know, raises it up or not, and it ends up being the homeowner and he's shot. One of the arguments was bad tactics going into that. Anyways, on this one, what he's saying isn't that he should have taken cover once he even sees them. It's that before you even confront these people, before you even know exactly where they are, you should have hid behind a car. So that's irrelevant, unduly prejudicial, properly kept out. How about baby gun versus gun? Are they really indistinguishable from a distance? It looks exactly like a gun. And plaintiff's own policing expert conceded that. Everybody conceded that on appeal. Judge Sargas led in the fact that it was a BB gun because he wanted the jury to get the full story of what was happening, and frankly the jury got the BB gun as part of the evidence. So it was like, yeah, this is a BB gun, but every single witness who saw it described it as being a real gun. I mean, if you would see it, it's exactly like a real gun. That's why he's using the robbery. Did it have the orange tip? No. No. Instead of having an orange tip, somebody put a laser sight on the bottom. So it's a heavy metal gun, completely black. It looks exactly like a .40 caliber pistol. And every single witness who saw that gun or who touched the gun or who used that gun, Demetrius Braxton, everybody described it as looking like a real gun. Except obviously its owner. Tyree King. Yeah. Which is, I mean, this is a really sad, tragic case. You know, this was a hard case to have just because you have a 13-year-old kid who lost his life, but it's an objectively reasonable use of force. And if the court doesn't have any other questions, I do want to leave you. Was there any testimony as to whether the, I don't know if I should refer to him as the victim, but the deceased appeared to be a 13-year-old child or an underage person? Was there any testimony about that? Yeah, and he absolutely looked like he was 13 years old. He was 5'2", 120 pounds, I believe. He absolutely looked like a 13-year-old in this. I will say that plaintiff's own expert witness said when it comes to a suspect with a firearm, the fact that he's 13 doesn't matter. I mean, his quote was, a 13-year-old can kill you just like a 30-year-old can. So, but this is sad. I don't typically like to read anything to the court on an oral argument, but I do want to leave you with what Judge Sardis wrote in a summary judgment motion before the trial, which is why we had the trial. Because I think this really goes to the core of this appeal. And here's what he wrote. He said, This case involves genuine disputes of material fact, but whatever the facts may be, reasonable minds can only agree that what happened here was a tragedy. Some witnesses say the officer fired his weapon because Tyree King was pulling a gun. Others say he did no such thing and he was only attempting to flee. In this system of justice, the public has faith that the jury will find the truth. Your Honor, in our opinion, the jury found the truth. Unfortunately, Tyree King pulled out that gun and based upon the totality of the circumstances, this was an objectively reasonable use of force and we need to respect the unanimous jury verdict in this case because that is the cornerstone of our entire system of justice. Okay. Thank you. Your rebuttal. Thank you, judges. I'd like to just take a step back and say, make sure that you understand what the undisputed facts were in this case. One, Tyree King did look like a 13-year-old, and everyone else on the scene acknowledged that right away. He looks like a very small 13-year-old. Defendant Mason refused to acknowledge that and said that he was a black man. At the time that Tyree was shot, he was fleeing. He was fleeing from the moment Mason saw him and he was fleeing until the time that he was shot. Everyone testified to that, including Defendant Mason. Although he said that there was some kind of stutter stuff in the middle, he acknowledged that at the time that he was shot, he was fleeing from him. I thought the nurse said he was standing up straight, which doesn't sound like somebody who's fleeing. Well, there was a moment when he was running through this kind of parking area where he stopped and did this stutter step thing. What Defendant Mason testified to was that he thought that he was choosing a direction to continue flight, and then he turned. Mason testified that he believed that he was continuing his flight, and that is the time that he was shot, the first shot we believe to be in his temple and then two more times. Obviously his head is turned at least, and Defendant Mason testified that he was canted away from him at the time that he was shot, so he was fleeing. He also never pointed the gun. The only testimony here from anyone that Tyree ever even had that gun in his hand or out of his waistband was from Defendant Mason, which is why these evidentiary rulings that prevented us from being able to impeach Defendant Mason about prior testimony and other impeachable things is so important. What do you do with this obvious problem that, you know, if the rule is you can't shoot until the gun's pointed at you, it might be late. Sure. Well, the law I believe in this circuit, Judge, is that it's – certainly we don't say the gun has to be pointed at the only time. However, if the mere possession is not enough, reaching for a gun is not enough to use deadly force, there has to be some other indication that the suspect is going to use that gun. What's wrong with the instructions on this point? On this point about pulling the gun? Well, because I believe, again, the subjective intent of Defendant Mason to shoot either at or – You heard what I said about the subjective thing. I think I'm right about that. Respectfully, I think it's actually a disjunctive test. Now's the time to say I'm wrong. And this is laid out for you in Wilson v. Gregory, but the test is a person acts in a reckless manner if he displays a conscious – Okay, wait. I want to make sure you heard what I said before. It's a conjunctive test. You don't get to recklessness unless you establish, at a minimum, it was a negligent battery. In other words, it was a wrongful battery. And I think that's what Ohio law is doing. Ohio law is not saying you did something, you had a terrible state of mind, someone was hurt, end of story. You still have to have a wrongful battery. So that's what's meant by conjunctive. You have to have both. And if you don't have the first one, I think that's what our cases mean. If you don't have the first one, we can't get into the state law claim. What am I missing about that? That's central to your argument. Well, in determining whether there was a wrongful battery, you need to look at the totality of the circumstances. Exactly. But that doesn't necessarily pick up the second prong of liability under Ohio law is what I'm getting at. I understand what you're getting at. And I believe that the way that the wrongfulness of the battery is determined by considering whether or not it was a reckless battery. You're saying it's not a conjunctive test. That's your whole point. Yes. I'm saying that the battery is not wrongful if it's just a negligent battery. The battery is wrongful if it is a reckless battery. The law, I think, is pretty clear on that. And the reckless battery can be either objectively reckless, can be determined either with objective or subjective evidence. And this is, again, in the Redrick Pruitt case, an interesting one. In that case, this court allowed the state law claims to proceed to a jury trial against Defendant Pruitt, who was the second, I'm sorry, Plaintiff Pruitt in that case, who actually was holding a gun and pointing it directly at the officer at the time but was shot before he was able to shoot the officer. And I think that's an important thing to look at to determine how this court has evaluated state law claims versus federal law claims because in that case, the court did find there was no federal law claim for him but that state law claims, even in that circumstance, could go to the jury. Okay. Thank you very much. Thank you. We appreciate your helpful briefs and argument. Thanks for answering our questions, which we're always grateful for. The case will be submitted.